On behalf of the Appalachians, Ms. Anastasia Brooks.  May it please the Court, this is an appeal from the trial court's denial of a motion for leave to file a successive petition for post-conviction relief. Let me say at the outset that the facts of this case make it highly unusual, and one striking fact is that the identity of the victim, and this was a murder case, was not known at the time of trial, and in fact it was not known until 2006, some six years after the trial, and after Mr. Strong had completed all of his direct appeals and post-conviction proceedings in the state of Illinois. Which raises a specific question, and I apologize for taking you off track, but if police working on this for six years, maybe not every single day, but over a period of time, could not identify this person, and therefore identify certain other acquaintances of hers, as in Lewis and Chumiso and the other names, how could her attorney be incompetent? Well, Your Honor, the... For not conducting the investigation. Yes, Judge, yes, and that is one of the claims that we do make in our petition. Yes, and the allegation that we make with respect to ineffective assistance of counsel is that defense counsel relied entirely on the police investigation that was conducted by the Lake County police, by the Lake County Major Crimes Task Force, and that investigation involved, was actually quite a thorough investigation, but the Lake County police contacted almost every establishment and institution at which a disabled young woman who was, and this was the victim in this case, might have frequented. Not only were they looking for information about the victim who appeared to be disabled and who was quite distinctive looking, quite odd looking, they combed Lake County and they tried to find out whether she had been seen in a bar or in a motel or in any kind of institution that might deal with a disabled person, and they found that actually no one had seen her in Lake County, which we allege should have alerted defense counsel to the proposition that this woman was not from Lake County, and that further steps should have been taken to investigate this matter, and that reliance on the police investigation was not sufficient in this case. There are many cases that have so helped, and the... Well, what funds might he have had available... I'm sorry? What funds might he have had available to hire an investigator? I mean, he doesn't go out and investigate. We're talking about, I assume he was not retained counsel, but appointed counsel, is that right? No, this was a case taken on by the Lake County Public Defender's Office. Okay. So the Lake County Public Defender's Office has investigators. They did assign investigators to this case, but from what we can tell from the record that we have so far, and we've not been permitted to have a hearing on this at this stage, the only efforts that the defense counsel and the investigators made to investigate was to rely on what the Lake County police did. And the Lake County police did not look outside of Lake County. I mean, they pretty much confined their investigation to Lake County. Well, so if we agreed with the principle, what would you have to say that defense counsel needs to do? Well, I think defense counsel needs to adhere to the standards that are set forth in the relevant case law and the Strickland cases and the cases that follow that, that require defense counsel to conduct an independent investigation of the facts, and that's not what happened here. And delay trial for six years, possibly? Well, I don't think it would have taken six years, Judge, based on what we see. The information from Kane County with respect to the fact that this woman was missing was there. The Kane County police, the Carpentersville police, were on top of this quite early on. In 2002, as a matter of fact, they went down and they interviewed Gonzalo Chumizo based on the information that they were able to discover. But I'd like to, if I may turn the question, can I focus on this question of actual innocence? Yes, and I was just going to ask if we could focus on actual innocence. And where are Mr. Tweedy's affidavits? And if we don't have them, how can we rely on the other affidavits? Well, I can explain where Mr. Tweedy's affidavits are if we don't have them. And I think we make that very clear in the record that we have spoken to Mr. Tweedy on numerous occasions. We've spoken to him in person three times. He's given us information which indicates that everything that he said at trial and everything that he said before trial was a complete lie and that he's coerced to make the statements that he made to the police in a trial. But he's been unwilling to give us an affidavit. But that's not the key issue as far as innocence is concerned. I think that's an important issue. It's an issue that supports our innocence claim. But the key issue, Judge, that I would like to discuss, Your Honor, is the newly discovered information, and no one disputes that this is newly discovered information, about the identity of the victim which was not known at trial. And this is information that we think would likely change the result of a trial if we were allowed to present this at trial. This is evidence of alternative suspects. The evidence, if I might just go through this and talk about it for just a minute, the evidence is, as I think you know from reading the briefs and the material that we filed, is that six years after Mr. Strong was convicted, the identity of this victim, this unfortunate woman, Mary Kate Sunderland, was discovered. And it was determined that she was a disabled person who lived in the Carpentersville area, that she was not able to function on her own without assistance,  and that in the spring of 1999, she came under the influence of the Lewises, of Tracy Lewis and Kareem Lewis, who basically took over her life, separated her from her family, and we think there is substantial evidence to show that she arranged for the marriage, or that they arranged for the marriage of Mary Kate Sunderland to Gonzalo Chumizo. This Chumizo fellow is the person who was in the mental institution in Florida who has confessed to killing Mary Kate Sunderland. In three different places. I'm sorry? In three different places. Yes. In Cuba, Kentucky, and Elgin. Right. And there is no doubt. I'm sorry. Well, how are those statements consistent with the facts of the case as the police uncovered them, particularly where the body was found, and why should this make a difference? Justice Zinoff, I think it's important for us, for me, to fully describe the nature of our claim of innocence based on the discovery of the victim. We're not basing our claim of innocence based on the discovery of the victim solely on Mr. Chumizo's statements that he made to the Carpentersville police in 2002. Although, the one thing that he did say that nobody knew was that Mary Kate Sunderland was dead. I mean, right out of the box, he said, she's dead, she's been murdered, and she was murdered at or near the time that in fact she was found in the Lake County Forest Preserve. So he provided that basic information. Now, there's no question that based on Mr. Chumizo's mental health history that he's a very troubled man. And the records are replete with instances in which he's revealed to have been violent and have a very disturbing mental health history. But I ask your honors to consider, and this puts, I think, the question in greater perspective, why did Mary Kate Sunderland marry Gonzalo Chumizo? How did that happen? What's behind all that? I mean, why would a mentally disabled woman marry a perhaps even more mentally disabled and dangerous man? Well, I think the answer to that is that both of these people were under the sway of the Lewises. And that is that combination of evidence, the involvement with Gonzalo Chumizo, but it's more the involvement with the Lewises who had a history of taking advantage of people who were under state care, of building them for their money, and in some cases being abusive to them. That shows the circumstantial evidence that Mr. Chumizo and the Lewises were involved in Mary Kate Sunderland's death. There are other facts that I think are very, very compelling. Three days before Sunderland was found in the Lake County Forest Preserve, her cash card was used in the Carpentersville area. That meant that she was still residing in that area. There was no evidence that she knew how to drive. As a matter of fact, there is evidence that she didn't know how to drive. She didn't know how to get the 40 miles from the Carpentersville area to Lake County. She had never been seen in Lake County before, and as the police investigation reveals, she was not seen anywhere in Lake County that they could figure out before the time that she was murdered, despite Tweedy's claim that they had been associating with this woman for six months. At one point he made that assertion. So we have this evidence that Ms. Sunderland was not a frequenter of Lake County. As a matter of fact, three days before she was found dead, her cash card was used in the Carpentersville area. We also know that a year after Ms. Sunderland was found dead, and actually right about at the time of the trial of Jason Strong, the Lewises attempted to use her cash card in the Carpentersville area. They attempted to use her cash card. They went into a bank, and one of them said, I am Mary Kay Sunderland's sister, and I want to use this cash card to get money out of her account. Counsel, let's assume that this evidence is new, material, non-cumulative. How is it conclusive in view of the defendant's confession and the other evidence, Mr. Tweedy's testimony, and the other evidence introduced at trial? Aren't we missing one element here this last element? I believe that, in fact, we satisfy all elements of the Ortiz test, and certainly the elements that you've described. Let me address the one that you're asking me to address. Conclusive and likely to change the result of trial. Now, if we had, if defense counsel had known about all of this, they certainly would have tried to convince the judge to allow evidence of alternative perpetrators to be introduced. And under the Beeman case, we think that there is no question that according to those standards, if the Illinois Supreme Court is set for the introduction of evidence of alternative perpetrators, that defense counsel would have been able to introduce that evidence. The other point, Judge, is that, Your Honor, is that there is a, there is a, having, knowing who the victim is is just so absolutely crucial to being able to formulate a defense. In this case, we know that, for example, when Mary Kay Sunderland was found, that there was evidence on her body of abuse that dated back to a time prior to the, just the dates around which she was found in the forest preserve. Well, if defense counsel had known that she had been associating with the Chumizo Lewis group, they would have looked into the question of what, well, what does that mean? I mean, what, how, do those marks, do those bruises, did they come from an abusive situation with these people? Did they have something to do with their death? I think the entire character of the defense would have changed. And I think if the jury had known that there were alternative suspects in this case, it would have come to a completely different decision. It would have changed the result of the trial. The jury would have known that this wasn't a case in which Jason Strong encountered this woman on the street and took her up to her motel room. They would have been convinced that- But he said he did. Well, he made a confession. There is no physical evidence that corroborates that confession. There is no physical evidence that was found in- He took her, he took them to the location. Well, first of all, there was no physical evidence. This was supposed to be a beating. Well, I mean, physical evidence is the body, but- No. But this was supposed, this was allegedly, based on what Tweedy said, this woman, Mary Kay Sunderland, was actually beaten in Jason Strong's room. There was no physical evidence of any blood or any semen or any DNA, anything found in Jason Strong's room. There was also no evidence, she was supposedly transported in a van to the Forest Preserve. There was no evidence in Jason Strong's van that there had been any brutality or any blood or anything like that in the van. So this case, you're right, Judge, did rest to some degree on Jason Strong's confession to the Lake County Police. Now, he filed a motion to suppress. I'm sorry, did you have a question? Well, and to other things that related to what they found, that he said he did certain things and they found evidence of those certain things. Judge, I think if you look at this, if you look at the confessions of Jason Strong, but first look at the statements that Tweedy made, what you'll find is Tweedy was the first person to provide information to the police. He gave quite a detailed account of what happened, you know, based on what we think is whole cloth, because he's probably the most notorious liar that I've ever come across in any criminal litigation that I've seen. Judge, I'm sorry. A couple things that trouble me. There's an identification of the shirt that the victim was wearing that was attributed to your client, that it was his shirt. The wax, which was corroborated from the room. Am I correct about that? Judge? Am I correct about those two items? Well, there was an identification of the shirt, but the witness who made that identification recanted her testimony, so that's in the record. She signed an affidavit that she was coerced into making that statement. As far as the wax is concerned, Judge, there was wax found on that sweatshirt, but it was not proved to be wax that came from any wax that was found in Jason Strong's room. I'm not saying conclusive proof, but these are corroborating details that were in the record. And doesn't your really, what it all boils down to, Chumiso's statement that he's the murderer? No, Judge. I don't think that that is boiled down to all that. I don't think that, and I think that that's what happened before Judge Bores said it. You're not maintaining that he is the murderer, just that? We're saying we want a hearing to determine who killed Mary Kay Sunny. We think that we're entitled to a hearing based on the information that we have developed in the course of our investigation. We should be able to interview Mr. Chumiso. We can't interview him now without court process because he is in a mental hospital in Florida and because the HIPAA privacy laws prevent us from doing that. We think we should be able to put Mr. Tweedy on the stand and under oath have him say what happened or didn't happen. Sorry, did I hear the buzzer go off? You did. I do have another finish your thought to Justice Burkett's question. Well, I want to make it clear here. We're asking for a hearing on our motion. We're asking to be able to call the witnesses who have knowledge of this case, and that would include Mr. Chumiso, Mr. Tweedy. We believe that we have more than satisfied. Remember, we filed a motion for leave to file a post-conviction petition, and we feel that we have more than satisfied our burden to show that the evidence of alternative suspects would likely have changed the result of trial. Do you have in your research, have you found any cases that say third-party affidavits, which will as a necessity of her hearsay, are they sufficient to get you past this burden? Are there any cases that you've found on that issue? Judge, I think the answer to that is that the Post-Conviction Hearing Act contemplates the filing of a variety of different kinds of documents, including affidavits. And we're not relying solely on the affidavits of my affidavit or anybody else's affidavit about what Jeremy Tweedy said, other than to provide the court with background about what Mr. Tweedy is saying now. The information that has developed with respect to the Chumizo-Lewis connection is based on not just affidavits, but on police reports. I mean, what motive would the police report, would the police in Carpentersville have to fabricate the relationship between Mary Kay Sunderland, Gonzalo Chumizo, and the Lewises? I mean, to me it seems that that's the most reliable kind of information you can have about alternative suspects, not somebody's perhaps, you know, self-serving affidavit about what happened. I mean, this is documented evidence put together by people who had absolutely no ax to grind. And we think that that provides us with the basis for being allowed to proceed with this case in the Circuit Court of Lake County. Thank you. We'll have an opportunity for one more. Thank you, Judge. And there are other issues that we raised, which I'm sorry that we can't get to, but we'll stand on our briefs on those issues. Thank you. Ms. Brooks. Thank you, Your Honors. May it please the Court and counsel, my name is Anastasia Brooks, and I represent the people in this case. First of all, the presentations in the post-conviction petition are nothing earth-shattering. Tweedy has given many statements. He's recanted multiple times. And the information about Shimizu's delusions about committing a murder, not this murder, but a murder of Mary Kay Sutherland, are totally speculative in terms of any relation to the death that was in the body that was discovered in this prosecution. Now, I understand, as Mr. Carity has just told us, that a variety of evidence or a variety of information can be submitted with the post-conviction petition or the request to file the successive. But is there any specific case that talks about third-party affidavits, a critical one in this case, about Mr. Tweedy, you know, putting it over the top and getting it past that first stage? Your Honor, I have not found any, in my research, that were successful in overcoming a burden. And I'm not sure Morales was a leave-to-file case, but Morales was a case that we cited that dealt with a hearsay affidavit, and that was not sufficient to advance the petition past that particular stage. Now, it was not a leave-to-file case, I believe, though. So I haven't found any case directly on point with these facts. However, the allegation by the defense is that well-pleaded facts have to be taken as true for purposes of this proceeding. However, the facts that they're pleading are that Tweedy made statements to a defense investigator or defense attorneys who now represented Jason Strong. If that is taken as true, that Tweedy made certain statements, that doesn't mean that the underlying facts that Tweedy now alleges apparently are true. That's not something that the law would require, at least I haven't found a case and the defense hasn't cited any, that those underlying statements that Tweedy is now making have to be taken as true. Merely the fact that perhaps that he said those. Now, Tweedy at this point can say anything to anybody. There's no consequences, apparently, that would attach unless he actually either appears in court and testifies or signs an affidavit, at which case he could be prosecuted for perjury if, in fact, he has committed that offense. We're not conceding any defense allegations about the truth of what Tweedy now says. It's just that for purposes of this proceeding, it's not a credible situation. Of course, the defense says, well, the judge is improperly relying on credibility findings. But really, it boils down to this question here, is what the defense is now presenting is so conclusive, that would likely change the result on retrial. It has to be such that you have to consider, Your Honors, the unique circumstance of a person like Tweedy, who's made statements and other recantations of different varieties, and a person who in the defendant's first post-conviction petition said has zero credibility. Now that's the person he's relying on. Also, the fact is that the defendant personally concurred with his trial attorney's strategy during the trial of blaming Tweedy for the murder. And the defense attorney at trial also essentially ridiculed Tweedy's claims of police coercion. Now, of course, the tables have turned, and Tweedy is somehow now credible, and that he was, in fact, coerced according to the defense, because it apparently suits their position at this stage of the case. So it's a situation where, and also the fact that the defendant has confessed, he's had three opportunities, pre-trial, post-trial, and this first post-conviction petition, in order to try to substantiate his claims of police coercion with respect to himself. Now, that was rejected by the trial court before trial, and apparently the trial court accepted the credibility of the officers who denied the alleged misconduct that was in the pre-trial motion to suppress. So it's a situation where the record does rebut these allegations, and the defendant cannot get past his own confession. His trial attorney, post-trial, was talking about how he didn't really want to say he adopted that written statement at trial, but that's really what they did. The strategy was to let, according to the defense attorney, let the state prove that he was there, and that it was actually the victim who was found dead in that forest preserve had been in Jason Strong's apartment.  So essentially, now they're trying to, to essentially cast this case, try to develop reasonable doubt, under a theory that, essentially, that Luis is their chemiso, is an alternate suspect. But also, in order to get to that stage, they also have to basically accuse every involved member of the Lake County Major Crimes Task Force, as well as perhaps even the prosecutors who tried the case, of being involved in this sort of conspiracy to coerce statements out of people, not just the ones in custody, but also Margaret Hicks, who identified the shirt. Her affidavit doesn't really disclose anything that would seem to give one reason to lie, not only to police, but to perjure herself at trial, apparently. Let me ask this question. Are you aware of any case that says that on post-conviction, the defendant is bound by the trial strategy that his defense counsel adopted in his initial trial? Is there any case that says that? Well, there's not a case that says... Go ahead. Yeah, I'm sorry. Exactly that point. But the point is that the defendant, he took that position personally, and he was willing to blame Tweedy for the murder. And that shows... That casts his allegations now in a totally different light. That's the point I was trying to make, not that he's legally barred. Does it preclude him from changing his strategy now? Well, no. In fact, if he can come up with conclusive proof that somebody else committed the murder, and that means his conviction violates due process, if he can do that, then the fact that his trial attorney blamed Tweedy is not going to bar him from winning. But he has not done that yet. He has merely presented the allegations that perhaps there may be something there, but yet it's up to them to present that in their petition and to substantiate that they have a viable claim to actual innocence, and they haven't done that yet. Really what they have is the theoretical possibilities that some unsavory characters might have been involved in this at some time before the body was discovered, but there's no way to connect it up with the actual killing in terms of either time or location. The fact that the Luz has apparently sold off the victim to Chumizo and arranged for her marriage in exchange for a payment sort of removes them from the case. I mean, they're essentially now they've gotten rid of Mary Kay Sunderland. They've passed her off to Chumizo. And, of course, there's no showing what activities Chumizo was doing at the time. In fact, you know, they talk about his longstanding mental illness. They don't even know if Chumizo was locked up at that point, like, you know, hospitalized or something, and then she just ran off and went her own way. And the fact that she lacked sort of, like, physical transportation and ability to drive doesn't necessarily mean that she could not have hitchhiked a certain distance or somehow arrived in the Lake County area from where she may have originated in. And so there's a lot of statements in the record about various investigators asking for whether they had seen her, if address in Elgin, for example, the one that got excavated, and then nothing was found. And the fact is that Chumizo's statements, although the fact that none of them fit anywhere closely with respects of the factual respects of this murder, a body beaten to death and dumped in a green belt forest reserve, whereas it was he did it in Cuba, in Kentucky, buried her in Elgin, cut her up, put her in a garbage can somewhere, stabbings. It was nothing remotely close to the facts of this case. And also the fact that Chumizo had made several other grand delusions, not just involving murders of Mary Kay Sutherland. It was the fact that there has to be some assurance that what he had told police about a murder, not necessarily this one, has any sort of grounding in reality. And that just is not something that can be said with confidence because of his schizophrenia that apparently is well documented while I'm stating things. There was a point in time when the Post-Conviction Act was not clear about what judge should hear post-conviction petitions. Now it is clear. And one of the allegations here is the judge went beyond what he was to do and, you know, determined that the petition couldn't succeed, essentially, or the evidence couldn't succeed. Actually, you know, talked about those things. When a judge looks at these affidavits, is the trial judge to remove from his mind anything that he's otherwise heard? Or does he have to look at these affidavits in light of what has occurred? Is he entitled to do that? It is the question of the judge entitled. The judge who heard the trial, it was a jury trial, though, I mean. Right. He sat there. He was there. He sat there. He now says he believes the defendant is guilty because he sat through the trial. It seems like the judge should apply the law if the law requires him to take affidavits as true for purposes of a particular proceeding. It seems the law would require that. The allegation that the judge erred on that ground doesn't prove, does not prove that he is, in fact, prejudiced against the defendant. That's hostility, distrust, ill will, et cetera. Those elements have not been shown in order to disqualify him. And the other allegations with respect to a misstatement of facts or. . . The police officers gave him the information. He won't sign an affidavit, but he didn't even meet this person until a week after this all happened. But the trial court has heard the testimony in the trial at some time previous where Mr. Strong has identified he's confessed. There's been this T-shirt or sweatshirt. There have been these things. Must the judge put those things that he knows out of his mind when he reviews these affidavits? I'm not sure what the rule is in terms of. . . If the judge is not permitted to consider credibility, then it would seem that the judge has to review it in accordance with. . . Has to review the petition that's tendered, not yet filed, in accordance with the law. And I don't know exactly what the law is in terms of what they're permitted to consider or not. It's not entirely clear. But essentially, judges have to make these decisions all the time. They have to fairly and partially apply the law. And yet, at the same time as human beings, we can't necessarily put entirely out of our mind things that we've heard before. Traditionally, the court looks at a post-conviction petition and takes all the allegations that are fled as true in light of the record. Right. And the record is something that the judge is well aware of because he sat through the trial. So he would have known all the various things that Tweedy had said. And all those are detailed very thoroughly in the defendant's pleadings. So the fact that it just doesn't make sense. If Tweedy was coerced, why is he telling an inmate in the prison it was Troy Ferraro? Why is he telling his own attorney certain things? And now, all of a sudden, it comes out to be that he claims that he made up everything and that they never even seen the victim at any time. And that just seems to be after this late in the game, after so many statements and iterations to various people in different capacities. It just doesn't seem patently credible of him to say this without any consequences, of course, say whatever he wants to anybody at this point. So for those respects, I'd like to just make a couple of comments about the cause of prejudice test. First of all, it's not clear that this is not, that this is, in fact, a freestanding petition. That's not entirely clear. They rely, to me, though, for purposes of ineffective claim. Tweedy is cited with respect to alleged rape violation. This isn't really truly a freestanding claim of innocence that's being asserted. And the fact is that the statute 122-1F requires leave of court to be granted only if a petitioner demonstrates cause of prejudice. The statute requires a demonstration of cause of prejudice, not just a gist of a claim or a colorful claim of cause of prejudice. It's not a situation where the first stage review, the standard of frivolity applies because this petition has not yet been filed. Section 122-2.182 applies for trial court's initial reviews of petitions after they're filed. This is a pre-filing stage. So it's not a situation where the defendant can show that he has to only present colorful claims or gists of claims or anything that would sort of pass the high gist test for a first stage review. So just with respect to the effect of assistance, the deference to the investigation decision has to be given in respect to, in light of the trial strategy to which the defendant concurred. If the defense is going to blame Tweedy for the murder, knowing that police spent 10,000 man hours and all their resources looking for the identity of this woman who was found dead, and the defense is going to blame Tweedy for that, then what would be the point of the defense to duplicate or exceed those efforts of the police? So it's not a situation where there's a per se rule that the defense can never defer to police investigation, particularly on a point here where it's not going to be relevant to the defense's trial strategy that they selected. So for those reasons, if this court has no further questions, I thank you and request this court to affirm. Thank you. Mr. Garrity, do you have rebuttal? Yes, Judge. I don't know. Did you have questions that you wanted to ask me in addition? No. Or should I just proceed? Okay, thank you. Not at the moment. Okay, thank you. Let me respond first to the issue about the confession and the trial strategy. I think the record does contain affidavits of Mr. Strong filed in support of this post-conviction petition that indicate that he professes his innocence and that he was prevented, coerced, from testifying. And that's an issue that he raised in the appellate courts in Illinois and he's raised throughout. He's not prevailed on that issue, but he's raised that issue early on. So he did seek, according to him, to tell his story, to testify. And he did always assert on appeal and at the motion for new trial that his confession was coerced. And the phenomenon of false confessions is not unknown in Illinois. And here I think that we have a situation in which there is more than ample evidence to suspect that this confession was false. We have the information coming from Jeremy Tweedy. He's the first person in the police station. And he makes up this fantastic story that then gets sort of played out in the statements of Jason Strong. And don't forget Jason Johnson, who is now deceased but who was a co-defendant, who immediately recanted his confession and claimed that he was subject to the same kind of abuse that Mr. Tweedy was. So early on in this investigation, we have evidence of police coercion of Tweedy and we have evidence of police coercion of Strong and also of Jason Johnson. Now, the question of whether the evidence that we presented would likely change the result on retrial, again, I urge your honors to focus on the evidence of alternative suspects that was developed by the Carpentersville police that involved the Louis's, that involved Chamiso. And I ask your honors to just think about the circumstantial evidence that we presented in support of this claim. We do not have direct evidence of, at this point, of Gonzalo Chamiso or the Louis's committing this crime. But, you know, a lot of criminal cases are based on circumstantial evidence. And sometimes circumstantial evidence is the most powerful evidence in the case. And that is certainly the case here as far as the alternative suspects are concerned. Counsel, I do have a question. It was suggested by opposing counsel that this isn't necessarily a freestanding actual innocence claim and that the statute requires cause and prejudice. Do you agree that this isn't actually or isn't necessarily a freestanding actual innocence claim? And assuming it isn't, do you meet the cause and prejudice criteria? I strongly disagree. This is a freestanding claim of actual innocence. There are other claims that we make in our petition which are, we admit, subject to the cause and prejudice test. But we have asserted a freestanding claim of actual innocence based upon the newly discovered evidence of the identity of the victim and the recantation of Jeremy Tweedy. So we think that under the Ortiz case, we don't have to demonstrate cause and prejudice as to that issue. There's one final point that I'd like to raise here. One question that I think you were alluding to was, well, what's the standard when someone comes in on a motion for leave to file a post-conviction petition, a successor post-conviction petition? And how does the court have to view the documents that are submitted? The case of People v. Williams, it's at 910 Northeast 2nd, 627. It's a 2009 First District case. It says that in a case involving, and this is a counsel case involving a motion for leave to file a successor petition, the affidavits in support of the successor petition should not be given any less weight than those that accompany an initial post-conviction filing and that they should be considered as true. Now, that's the closest case that I could find on the subject, and I think it's very clear that Judge Boras did not follow that standard. He, as a matter of fact, got the facts wrong. I mean, when he was sort of relying on his memory about what happened in the case, he referred to Sutherland, and I don't want to minimize what happened to her at all, but he referred to the fact that he thought she had been repeatedly raped. Well, she hadn't been raped. She hadn't been sexually assaulted. So he was relying not only, you know, placing, you know, all the weight on what he remembered in trial, but he got the facts wrong. As opposed to looking at the records, he was relying on his recollection. That's right. And I think if you look at this record also, I think there's a great deal of evidence that Judge Boras actually read the post-conviction petition. That's my – I mean, I think that that's fairly clear if you look at the transcript of the hearing that we had on this. Well, thank you very much. Thank you for hearing me. Thank you, counsel, for your arguments. We will take the matter under advisement to issue a decision in due course. We will stand in a recess.